EDWARDS, Judge.
Lampton E. Dunaway died from a shotgun wound to the chest on January 21, 1978. His wife, Jean W. Dunaway, plaintiff, sought to collect $36,001.17 in life insurance benefits from various policies. When the insurance companies refused payment on the ground that Mr. Dunaway had committed suicide which, according to the policies, precluded payment, plaintiff brought suit. Bankers Life and Casualty Company, Life Insurance Company of North America and Volunteer State Life Insurance Company were named defendants.
Following trial by jury, a verdict of ten to one against plaintiff was returned.[1] Judgment was in accordance with the verdict and all costs, including $250 in expert witness fees, were assessed against plaintiff. From that judgment, plaintiff appeals. We affirm.
Appellant specifies that the trial court erred in commenting on certain testimony, in making various evidentiary rulings and in refusing to give all thirteen of plaintiff’s requested jury instructions.
Appellant complains of remarks made by the trial judge while the Reverend Gerald Boerger was testifying. A careful reading of that testimony shows that Reverend Boerger was remarkably forgetful and indefinite while on cross-examination by defense counsel. The court’s comments that “all we want you to do is be honest” and that the witness was being “evasive,” were not prejudicial but were attempts, albeit unsuccessful, to afford defense counsel a fair opportunity to cross-examine a witness who was reluctant, at best.
The admission of Sergeant Charles Bailey as an expert in homicide investigation was not an abuse of the trial court’s discretion.
Defense counsel’s reference during opening argument to a note left by the decedent as “a cry for help” was not prejudicial to plaintiff. Plaintiff produced the note in answer to a subpoena requesting any notes written by decedent within seventy-two hours of his death. The note, reading in part “I feel bad” and written in tortuous fashion, was properly admitted into evidence during trial. While the note may ultimately have weighed heavily against plaintiff’s case, its mention in opening argument was irrelevant since the trial judge correctly instructed the jury that argument by counsel was not to be considered evidence.
It was not error for the trial court to disallow certain testimony by Dr. Curtis A. Steele and Irving Johnson, Jr. Plaintiff’s counsel asked Dr. Steele whether a person as intoxicated as decedent was at the time of his death could understand the consequences of his behavior. The answer, calling for a conclusion of law, was properly disallowed. Irving Johnson’s testimony was quite rightly restricted to chemical analysis. He was not allowed to testify about the effect of alcohol on humans, an area beyond his expertise.
The cross-examination of Dr. Steele did not exceed permissible bounds and, contrary to appellant’s contention, he was not discredited at all.
Appellant urges that the trial court should have admitted the entire record from another case to impeach Dr. Hypolite Landry’s testimony that he had never made an error in labeling a case as suicide. Dr. Landry immediately corrected himself and admitted to having been wrong. There was, therefore, no need to impeach his testimony.
Appellant’s final contention is that the trial court erred in not giving all *390 thirteen of plaintiff’s requested jury instructions. A comparison between the requested instructions and those that were actually given demonstrates that the jury was given adequate instruction as to the applicable law. Hanks v. Drs. Ranson, Swan & Burch, Ltd., 359 So.2d 1089 (La. App. 3rd Cir. 1978), writ denied 360 So.2d 1178 (1978). There was no need for the court to specifically instruct the jury as to the impairments caused by alcohol, such impairments being common knowledge.
Appellant's claim that the jury was not given the applicable law and that “the jury was confused” and therefore arrived at a verdict contrary to the law and evidence is wrong.
This trial was very hard fought. Plaintiff’s counsel objected to virtually any testimony or evidence supporting a finding that Lampton Dunaway committed suicide.
A careful review of the entire record convinces us that, far from suffering from the cumulative effect of numerous allegedly incorrect evidentiary rulings as urged by appellant, the jury heard the witnesses, considered the evidence and found Lampton Dunaway’s tragic death to be what it really was — a suicide. The note left by Dunaway, the fact there was a contact wound, the powder burns, the absence of a defective shotgun and all the testimony, particularly that of Officer Walter R. Mullins, Jr., make it all too clear that, despite all the testimonial conflict, Mr. Dunaway took his shotgun out of the closet, placed a shell in it, pointed the gun at his heart and pulled the trigger.
We can never know why decedent chose to kill himself. But we can determine that he did. A fair viewing of the evidence excludes every other reasonable hypothesis or explanation but suicide. The jury properly found that defendants had carried their burden of proof. Rome v. Life and Casualty Insurance Company of Tennessee, 336 So.2d 275 (La.App. 1st Cir. 1976), writ denied 338 So.2d 1155 (1976); Newdigate v. Acacia Mut. Life Ass’n of Washington, D.C., 180 La. 979, 158 So. 358 (1934); Webster v. New York Life Ins. Co., 160 La. 854, 107 So. 599 (1926).
For the foregoing reasons, the judgment appealed from is affirmed. All costs, both trial and appellate, are to be paid by Jean W. Dunaway.
AFFIRMED.

. One juror failed to return for the second day of trial. All counsel stipulated to trial by a jury of eleven.